

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

---

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York  10007*

July 14, 2008

By Electronic Filing

The Honorable Richard J. Sullivan
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

      Re:    United States v. Laverne Garrett,
              S1 07 Cr. 784 (RJS)

Dear Judge Sullivan:

      The Government submits this letter in response to the defendant's sentencing submission, dated July 11, 2008.

      For the reasons that follow, the Government believes that a sentence of imprisonment within the stipulated Guidelines range set forth in the parties' plea agreement (10-16 months), and an order of restitution in the amount of $15,000, would be a reasonable and appropriate sentence.

## I.    Background

      From about 2001 to February 2006, Garrett was employed as an office manager at the Henry Ittelsohn Center (the "Center"), which is overseen by the Jewish Board for Family and Community Services ("JBFSC").  The Center provided residential care and treatment for emotionally disturbed children, who received Supplemental Security Income ("SSI") from the Social Security Administration ("SSA").  In addition, the Center functioned as the representative payee for its residents' SSI funds.  In functioning in this capacity, the Center cashed SSI checks on behalf of its resident children and issued checks in corresponding amounts to Garrett, who then cashed them and held them in a safe.  In accordance with federal regulations, SSA allocated these SSI funds for the childrens' personal needs allowance, such as food, clothing, shelter, medical care, and personal comfort items.  *See*, *e.g.*, 20 C.F.R. § 416.640.[1]

---

[1]    The safe in which these funds were held also contained other "banks" of cash money, including a petty cash fund that would be drawn upon by individuals supervising the Center's residents.

The Honorable Richard J. Sullivan
July 14, 2008
Page 2

          In February 2006, an audit conducted by the Center revealed that there was
approximately $26,000 worth of SSI funds (from about 2002 to February 2006) for which no
records of disbursements existed, as well as shortages in other "banks" of money.  The Center
contacted the SSA and SSA launched an investigation.  Subsequently, SSA interviewed Garrett
on two separate occasions.  In the first interview, Garrett initially denied stealing any of the SSI
money, but later admitted that she had taken money from the Center, totaling approximately
$2,000 to $3,000.  During a subsequent interview, Garrett stated that she had stolen between $30
and $400 per week from the Center from about the fall of 2004 to November 2005.[2]

          Garrett subsequently was charged in a Complaint with violating Title 18, United
States Code, Section 641, based on alleged embezzlement of SSI funds from in or about 2002
until February 2006.  Garrett's then attorney submitted a misdemeanor/deferred prosecution
request to this Office, which was rejected.  Garrett was later indicted for this offense on August
20, 2007.  On January 17, 2008, Garrett pled guilty to a Superseding Information (the
"Information") pursuant to a plea agreement.   The Information charged her with embezzling
Government property in violation of Title 18, United States Code, Section 641 from in or about
the Fall of 2004 to February 2006.

          Under the terms of the parties' plea agreement, Garrett faces a stipulated
Guidelines range of 10 to 16 months, based on: (1) a base offense level of 6 pursuant to U.S.S.G.
§ 2B1.1(a)(2); (2) a four level increase pursuant to U.S.S.G. § 2B1.1(b)(1)(C) given that the loss
exceeded $10,000; (3) a two level increase pursuant to U.S.S.G. § 2B1.1(b)(2)(A) given that the
offense involved ten or more victims (including SSA and certain of the Center's residents); (4) a
two level increase pursuant U.S.S.G. § 3A1.1(b)(1) given that Garrett knew the victims of the
offense were vulnerable; (5) a two level reduction pursuant to U.S.S.G. § 3E1.1(a) given
Garrett's timely plea of guilty; and (6) a criminal history category of I**.**  In addition, under the
plea agreement, Garrett agreed not to appeal any restitution order above $15,000.

          On Thursday, July 3, 2008, the Probation Department issued a revised Pre-
Sentence Investigation Report ("PSR").  While the PSR concurred with the parties' Guidelines'
calculations and listed the Guidelines range as 10-16 months, it primarily recommended a
sentence of five years' probation.  In her sentencing memorandum, Garrett argues that such a
sentence is an appropriate sentence.

          For the reasons that follow, the Government believes that a sentence within the
Guidelines range of 10-16 months is a reasonable sentence, and that Garrett should be ordered to
make Restitution to SSA in the amount of $15,000.

----

          [2]     Documents obtained from the Center indicated that between approximately
$17,000 and $18,000 worth of the Center's SSI funds was missing and unaccounted for during
the period October 2004 to February 2006.

The Honorable Richard J. Sullivan
July 14, 2008
Page 3


**II.      The Guidelines Range Listed In The PSR Is A Reasonable Sentence**

          In United States v. Crosby, 397 F.3d 103 (2d Cir. 2005), the court explained that,
in light of United States v. Booker, 543 U.S. 220 (2005), district courts should now engage in a
three-step sentencing procedure. First, the court should determine the applicable Guidelines
range, and in so doing, "the sentencing judge will be entitled to find all of the facts that the
Guidelines make relevant to the determination of a Guidelines sentence and all of the facts
relevant to the determination of a non-Guidelines sentence." Crosby, 397 F.3d at 112.  Second,
the court should consider whether a departure from that Guidelines range is appropriate.  Id.
Third, the court should consider the Guidelines range, "along with all of the factors listed in
section 3553(a)," and determine the sentence to impose.  Id. at 113.

          **A.      The PSR Correctly Determined the Guidelines Range and No
                     Downward Departures Are Appropriate**

          The PSR's Guidelines calculations mirror those in the parties' plea agreement to
which no objection has been raised.  The approximate loss amount for which Garrett should be
held falls between $10,000 and $30,000 and the approximate number of victims of this offense
are between 10 and 50, representing SSA and the residents at the Center from the fall of 2004 to
February 2006.  In addition, the victims were "vulnerable" within the meaning of U.S.S.G. §
3A1.1(b)(1) given that they were children, were emotionally disturbed, and were entitled to SSI
benefits.  Accordingly, the defendant's Guidelines range is 10 to 16 months, a Zone C offense.
In addition, the PSR does not provide for any downward departures, and the defendant has not
sought any.

          **B.      A Sentence Within The Guidelines Range Is Consistent With The
                     Section 3553(a) Factors**

          18 U.S.C. § 3553(a) provides that the sentencing "court shall impose a sentence
sufficient but not greater than necessary, to comply with the purposes set forth in paragraph (2)
of this subsection," and then sets forth seven specific considerations, including: (1) the nature
and circumstances of the offense and the history and characteristics of the defendant; (2) the
applicable range under the Guidelines; and (3) the need for the sentence imposed—(A) to reflect
the seriousness of the offense, to promote respect for the law, and to provide just punishment for
the offense; (B) to afford adequate deterrence to criminal conduct; and (C) to protect the public
from further crimes of the defendant.

          In sentencing, courts "may not presume that the Guidelines range is reasonable
[but] must make an individualized assessment based on the facts presented."  Gall v. United
States, 128 S. Ct. 586, 596-97 (2007).  Nevertheless, "it is fair to assume that the Guidelines,
insofar as practicable, reflect a rough approximation of sentences that might achieve § 3553(a)'s

The Honorable Richard J. Sullivan
July 14, 2008
Page 4

objectives." United States v. Rita, 127 S. Ct. 2456, 2464-65 (2007); see also Kimbrough v. United States, 128 S. Ct. 558, 574 (2007) ("We have accordingly recognized that, in the ordinary case, the Commission's recommendation of a sentencing range will 'reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives.'") (quoting Rita, 127 S. Ct. at 2464-65). To the extent a court varies from the Guidelines sentence, "[it] must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." Gall, 128 S. Ct. at 597.

Here, a sentence within the applicable Guidelines range of 10-16 months is reasonable and consistent with the factors set forth in Title 18, United States Code, Section 3553(a). There certainly is no categorical reason to deviate from the applicable Guidelines range. Embezzling Government funds is a serious offense. In general, it deprives the Government of the ability to allocated federal funds for the public's welfare.

The facts underlying Garrett's offense highlight this fact. Garrett stole SSI money that was earmarked for emotionally disturbed children. And, this was not an isolated occurrence. Garrett committed this offense repeatedly, over a year and a half span. In addition, Garrett committed this offense for her own personal gain, and disregarded the needs of the children that were housed at the Center.

In light of this serious criminal conduct, a Guidelines sentence of between 10-16 months will fulfill 3553(a)'s objectives of affording adequate deterrence, providing just punishment, promoting respect for the law, and reflecting the seriousness of the offense. In the event the Court believes that 10-16 months of incarceration is greater than necessary to fulfill 3553(a)'s mandate, it should be noted that Garrett's offense level falls within Zone C of the Guidelines. For such offenses, the Guidelines allow for community confinement or home detention to be substituted for imprisonment, provided that at least one half of the Guidelines range (10 to 16 months) is satisfied by imprisonment. See U.S.S.G. § 5C1.1(d)(2).

The PSR does reference certain medical conditions from which Garrett suffers. Neither Probation nor Garrett, however, contend that Garrett will be unable to receive proper treatment for these offenses in prison. In addition, while defense counsel notes the remorse that Garrett feels for the offense, and the potential impact incarceration would have on her family (Def. Mem. at 5), these circumstances are often present for individuals who are convicted of crimes. See, e.g., United States v. Smith, 331 F.3d 292, 294 (2d Cir. 2003) ("It is not unusual, however, for a convicted defendant's incarceration to cause some hardship in the family."); United States v. Johnson, 964 F.2d 124, 128 (2d Cir. 1992) ("Disruption of the defendant's life, and the concomitant difficulties for those who depend on the defendant, are inherent in the punishment of incarceration.") These facts do not warrant a non-Guidelines sentence. Lastly, while there very well may be little risk of recidivism from Garrett, on balance, the 3553(a) factors referenced above all strongly weigh in favor of a sentence of incarceration.

The Honorable Richard J. Sullivan
July 14, 2008
Page 5

**III.    The Government Requests That Restitution Be Imposed In the Amount of $15,000**

In accordance with the parties' plea agreement (whereby Garrett agreed not to appeal a Restitution Order above $15,000), and after consultation with this Office's Financial Litigation Unit, the Government requests that a Restitution Order in the amount of $15,000 be issued against Garrett, to be payable to SSA.  This amount represents the approximate amount of misappropriated SSI funds for which Garrett should be held accountable based on the audit of the Center and Garrett's admissions.  I have been informed that the specific address to which Restitution should be sent by the Court is:

> Social Security Administration
> Debt Management Section
> Attention: Court Refund
> P.O. Box 2861
> Philadelphia, PA 19122

The Government has been informed by SSA that it intends to reimburse children who did not receive SSI funds to which they were entitled, in accordance with federal regulations.  *See* 20 C.F.R. § 416.641 (noting that where organizational representative payees misuse SSI benefits SSA will repay benefits regardless of whether SSA obtained restitution of the misused funds).  The Government has also been informed that SSA expects JBFCS to reimburse SSA for the total amount of misused and unaccounted for SSI funds at a subsequent date.  In the event this occurs prior to Garrett making full Restitution, the Government can submit a modified Order for Your Honor's consideration (pertaining to the beneficiary of the Court's Restitution Order), to ensure that SSA does not obtain double recovery for the portion of the misappropriated funds attributable to Garrett.

The Honorable Richard J. Sullivan
July 14, 2008
Page 6


**IV.    Conclusion**

        For the foregoing reasons, the Government believes that a sentence within the stipulated guidelines range set forth in the parties' plea agreement would be a reasonable sentence, and that the defendant should be ordered to make restitution to SSA in the amount of $15,000.

                           Respectfully submitted,

                           MICHAEL J. GARCIA
                           United States Attorney


By:      _____/s/_____
           Christopher L. LaVigne
           Assistant United States Attorney
           (212) 637-2325

cc:    Peggy Cross, Esq. (by facsimile)
       Nicole L. Guite (by facsimile)