

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

---

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York  10007*

August 20, 2008

By Electronic Filing

The Honorable Richard J. Sullivan
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

    Re:    United States v. Laverne Garrett,
                S1 07 Cr. 784 (RJS)

Dear Judge Sullivan:

        This letter responds to the Court's July 17, 2008 inquiry as to whether the residents of the Henry B. Ittelsohn Center (the "Center") are considered "victims" for purposes of enhancements under Sections 2B1.1(b)(2) and 3A1.1(b) of the United States Sentencing Guidelines ("Guidelines"). As summarized in more detail below, the Government believes that both enhancements should apply.

## Background

        The facts of this case have been summarized in the Government's previous submission and in the Pre-sentence Investigation Report ("PSR"). In short, during the relevant time frame set forth in the Information (Fall of 2004 to February 2006), the Center provided residential care and treatment for emotionally disturbed children who received Supplemental Security Income ("SSI") from the Social Security Administration ("SSA"). The Center is operated under the Jewish Board of Family and Children's Services ("JBFCS"), a non-profit, nonsectarian social services agency in New York City,

        The Center was the organizational representative payee for its childrens' SSI funds. The Center was thus responsible for maintaining and disbursing these funds on behalf of its residents pursuant to federal regulations. *See*, *e.g.*, 20 C.F.R. § 416.635 (listing the responsibilities of representative payees). In essence, SSA sent SSI checks to the Center on the childrens' behalf, the Center (via JBFCS) deposited the checks, and JBFCS then issued checks in similar amounts to the defendant, who was the Center's office manager. The defendant then cashed these checks and held the cash (essentially in escrow) in a safe on behalf of the children. In accordance with federal regulations, SSA had allocated these funds for the childrens' personal needs allowance, such as food, clothing, shelter, medical care, and personal comfort items. *See*, *e.g.*, 20 C.F.R. § 416.640.

The Honorable Richard J. Sullivan
August 20, 2008
Page 2

      During a portion of the period that the defendant served as the Center's office manager, she embezzled certain of the SSI funds that had been allocated to the Center's children. On January 17, 2008, the defendant pled guilty to embezzling federal funds, in violation of Title 18, United States Code, Section 641. As part of the defendant's guilty plea, she stipulated (pursuant to a plea agreement) that the following enhancements under the Guidelines applied to her conduct: (1) a two level enhancement pursuant to U.S.S.G. § 2B1.1(b)(1)(A) given that her offense involved 10 or more victims; and (2) a two level enhancement pursuant to U.S.S.G. § 3A1.1(b)(1) given that the victims were "vulnerable."

      On July 17, 2008, the Court requested that the parties provide briefing relating to both of these enhancement, specifically as to whether, notwithstanding the parties' plea agreement, the Guidelines and case law considered the children to be "victims" of this offense.

## Legal Analysis

      As summarized below, the Government believes that both enhancements set forth in the parties' plea agreement are applicable and that a sentence within the Guidelines range (10 to 16 months) provided in the plea agreement would be a reasonable sentence.

### Quantifiable Victims

      U.S.S.G. § 2B1.1(b)(2)(A) provides that a two level enhancement under the Guidelines applies if "the offense—(i) involves 10 or more victims." Application note 1 to this Guideline defines "victim" to include "any person who sustained any part of the actual loss determined under subsection (b)(1) [of U.S.S.G. § 2B1.1]." Application note 3(A)(1), in turn, defines "actual loss" to mean "the reasonable foreseeable pecuniary harm that resulted from the offense." And, "pecuniary harm" is defined to include "harm that is monetary or that otherwise is readily measurable in money." U.S.S.G. § 2B1.1 comment. (n. 3(A)(iii)).

      Here, it is undisputed that the defendant's conduct deprived certain of the Center's children (approximately 25) of federal moneys to which they were entitled. Importantly, however, SSA has represented that it will reimburse these children pursuant to federal regulations. *See* 20 C.F.R. § 416.641. In addition, the Government understands that the Center will reimburse SSA for the funds that it needs to re-issue. Accordingly, the children who were deprived of their SSI money will ultimately be made whole, and the Center will bear the actual loss stemming from the defendant's conduct.

      While the Government has not uncovered a case dealing with this precise set of facts, a number of courts have considered the situation of whether individuals who are ultimately made whole can nonetheless be considered "victims" for purposes of U.S.S.G. § 2B1.1(b)(2). Recently, in *United States* v. *Abiodun*, — F.3d —, 2008 WL 2924341 (2d Cir. July 30, 2008), the Second Circuit interpreted U.S.S.G. § 2B.1(b)(2) and held that individuals whose credit

The Honorable Richard J. Sullivan
August 20, 2008
Page 3

reports were unlawfully obtained could be considered "victims" under the Guidelines, even though they had been reimbursed for any corresponding monetary loss that resulted from fraudulent credit cards being opened in their names. In so holding, the Circuit held that:

> individuals who are ultimately reimbursed by their banks or credit card companies can be considered 'victims' of a theft or fraud offense for purposes of U.S.S.G. § 2B1.1(b)(2) if—as a practical matter—they suffered (1) an adverse effect (2) as a result of the defendant's conduct that (3) can be measured in monetary terms.

*Id.* at *6. The Second Circuit concluded that although the individuals whose credit report were stolen were reimbursed for any corresponding financial losses, they had to spend considerable time securing such reimbursement, which could be measured in monetary terms. *Id.*

Other courts have issued similar rulings. *See United States* v. *Lee*, 427 F.3d 881, 895 (11th Cir. 2005) (holding that mail fraud victims who were reimbursed for their losses were "victims" under U.S.S.G. § 2B1.1(b)(2) because "the monetary losses suffered by these parties were neither short-lived nor immediately covered by third parties"); *Cf. United States* v. *Yagar*, 404 F.3d 967, 971 (6th Cir. 2005) (finding that U.S.S.G. § 2B1.1(b)(2) enhancement was not appropriate where the purported victims suffered a "short-lived" monetary loss that was "immediately covered by a third party"). And, while the Guidelines do not address this specific issue, they do provide that "loss" shall only be reduced by money, or fair market value of property returned "*before* the offense was detected." *See* U.S.S.G. § 2B1.1, comment. (n.3(E)(I)) (emphasis added).

The above cases support the stipulation in the parties' plea agreement that an enhancement under U.S.S.G. § 2B1.1(b)(2) applies. While the Center has ultimately borne the financial loss for the defendant's criminal conduct, the children also suffered an adverse effect that can be measured in pecuniary harm and that was not short-lived or immediately covered by a third party. By virtue of the defendant's embezzlement, the children were deprived of moneys to which they were entitled and for which they have not yet been reimbursed.

Unlike in typical access device or bank fraud cases, the defendant's conduct did not subject the children to indebtedness that was immediately discovered and cured simply by communicating with credit card companies or banks. Rather, the defendant victimized the Center's children by stealing (over time) their SSI money, to which the defendant had access as the office manager of the children's representative payee (the Center). Importantly, while the federal moneys had been deposited by the Center, the Center held those moneys on the children's behalf. Thus, the defendant essentially intercepted and converted these SSI funds and prevented them from reaching SSA's intended recipients. While the children will be reimbursed by SSA, this has yet to happen, almost four years after the defendant's criminal conduct began.

The Honorable Richard J. Sullivan
August 20, 2008
Page 4

That being said, it should be noted that the Government does not have information (at present) to suggest that the Center's children received inadequate or sub-standard care as a result of the defendant's conduct. Rather, the defendant's conduct resulted in certain of the children's caretakers having to hold fund raisers in order to raise money for the children's personal and recreational needs. And, at least on certain occasions, the Center's workers obtained money for certain of the children's needs from what they believed was the Center's "petty cash" fund—another one of the Center's "banks" of money that the defendant maintained.

Accordingly, the Government recognizes that the application of this Guideline provision to this set of facts is not free from doubt. Nevertheless, on balance, given that it is undisputed that the defendant's conduct deprived individual children of federal moneys to which they were entitled, and given that the defendant has stipulated that ten or more victims were involved in her offense, the Government believes that this enhancement is applicable.

<u>Vulnerable Victim</u>

In addition to providing a two level enhancement for offenses involving 10 or more victims, the Guidelines also provide for a separate two level enhancement if "the defendant knew or should have known that a victim of the offense was a vulnerable victim." U.S.S.G. § 3A1.1(b)(1). Application note 1 to this section defines "vulnerable victim" to include "a person (A) who is a victim of the offense of conviction and any conduct for which the defendant is accountable under § 1B1.3 (Relevant Conduct); and (B) who is unusually vulnerable due to age, physical or mental condition, or who is otherwise particularly susceptible to the criminal conduct." Here, it is undisputed that the children who were victimized by the defendant are "vulnerable," owing to their age and handicaps. In addition, the defendant was well aware of this fact, as she was the office manager of the Center.

The application notes to this Guideline do not define "victim." Nevertheless, cases interpreting this enhancement have applied it broadly, and have gone so far as to recognize that a "victim" for purposes of this enhancement need not be the victim of the offense of conviction. *See United States* v. *Firment*, 296 F.3d 118, 121 (2d Cir. 2002) (holding that vulnerable victim enhancement applied where defendant pled to tax offenses "on the basis of the vulnerability of the victims of [the defendant's] telemarketing scheme that generated the taxable revenues"); *United States v. Haggard*, 41 F.3d 1320, 1326 (9th Cir. Cal. 1994) ("[C]ourts properly may look beyond the four corners of the charge to the defendant's underlying conduct in determining whether someone is a 'vulnerable victim'. . . . [T]he Guidelines specifically instruct the district court to take into account in adjusting the defendant's base offense level 'all harm' the defendant causes"); *United States v. Lee*, 973 F.2d 832, 833-34 (10th Cir. 1992) (vulnerable victim need not be victim of the offense of conviction); *United States v. Yount*, 960 F.2d 955, 957-58 (11th Cir. 1992) (same).

The Honorable Richard J. Sullivan
August 20, 2008
Page 5

Similarly, courts have recognized that the "vulnerable victim" enhancement may apply even where the "victim" did not suffer a financial loss. In *United States* v. *Echevarria*, 33 F.3d 175 (2d Cir. 1994), for example, the Second Circuit affirmed the district court's application of the vulnerable victim enhancement notwithstanding the fact that the Government and private insurers were the only entities that suffered an actual loss. There, the defendant misrepresented himself as a physician in order to attract patients. After seeing patients, the defendant submitted false medical claims on their behalf "for the purposes of defrauding third-party medical insurers." *Id.* at 180. The defendant pled guilty to mail fraud charges and to making false statements to the Government based on the submission of these claims.

On appeal, the defendant challenged this enhancement, arguing that the government and insurance companies were the actual victims of his fraud, rather than the patients. The Second Circuit rejected this claim, holding, "[t]he enhancement is warranted here because [the defendant] knew or should have known that his patients were unusually vulnerable due to . . . [a] physical or mental condition." *Id.* (internal quotations omitted). The Court went on to state that "even though there is a scam, . . . the economic impact of which is on the government, an enhancement for vulnerable victims is appropriate where the exploitation of patients is part of the scam." *Id.* at 180-81 (internal quotation omitted).

Other courts have reached similar holdings. *See United States* v. *Wright*, 160 F.3d 905, 909 (2d Cir. 1998) (holding that vulnerable victim enhancement applied where operators of facility for disabled adults embezzled federal funds; "[e]ven where the principal economic effect of the offense is felt by a nonvulnerable entity such as the government, 'an enhancement for vulnerable victims is appropriate where the exploitation of' vulnerable victims is 'part of the scam.'") (quoting *United States* v. *Borst*, 62 F.3d 43, 47 (2d Cir. 1995)); *United States* v. *Stewart*, 33 F.3d 764, 771 (7th Cir. 1994) (finding that vulnerable victim enhancement applied to elderly purchasers of funeral services even though funeral directors suffered the actual loss; "the defendant in this matter made his elderly clients the innocent instruments of his scheme to defraud the funeral directors of the value of their services"); *Yount*, 960 F.2d at 958 (holding that vulnerable victim enhancement applied where defendant misappropriated funds from elderly persons' trusts even though those persons were reimbursed by banks); *United States v. Bachynsky*, 949 F.2d 722, 735-36 (5th Cir. 1991), *cert. denied*, 121 L. Ed. 2d 101, 113 S. Ct. 150 (1992) (holding that in a fraudulent medical reimbursement scheme victims included "vulnerable" patients (in addition to insurers and Government) since "an unwitting patient was made an instrumentality of the fraud").

Applying these principles, the vulnerable victim enhancement under the Guidelines should apply to the defendant's conduct. As in the cases described above, the Center's children were victimized as part of the defendant's scheme. In serving as the office manager, the defendant took advantage of the children's status and embezzled their SSI money. This scheme went undetected until February 2006. Although SSA and the Center are the "victims" in terms of having to make the children whole, this should not preclude a vulnerable

The Honorable Richard J. Sullivan
August 20, 2008
Page 6

victim enhancement given that the Center's children were instrumentalities of the defendant's fraudulent scheme.  Indeed, even if the Court finds that the Section 2B1.1(b)(2) enhancement is too speculative, the Government believes that the vulnerable victim enhancement should nonetheless apply, since the Center's children were exploited as part of the defendant's scheme.

## Conclusion

For the foregoing reasons, the Government submits that the two "victim" enhancements in the parties' plea agreement should apply.

Respectfully submitted,

MICHAEL J. GARCIA
United States Attorney

By: _____/s/_____
Christopher L. LaVigne
Assistant United States Attorney
(212) 637-2325

cc: Peggy Cross, Esq. (by facsimile)